684 P.2d 326

STATE of Idaho, Plaintiff-Respondent,

v.

Pedro Munoz DE LA PAZ, Defendant-Appellant.

No. 14470.

Court of Appeals of Idaho.

July 10, 1984.

Brent T. Robinson, of Ling, Nielsen & Robinson, Rupert, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Mark H. Manweiler, Legal Intern., Boise, for plaintiff-respondent.

SWANSTROM, Judge.

Pedro Munoz De La Paz (Munoz) pled guilty to second degree murder. The district court sentenced him to the custody of the Board of Correction for an indeterminate term not to exceed twenty years. Three issues are presented on appeal: (1) whether Munoz voluntarily, knowingly and intelligently entered his guilty plea; (2) whether Munoz was denied the assistance of effective counsel; and (3) whether the sentence imposed was unduly harsh.

As to the first issue, in *State v. Colyer*, 98 Idaho 32, 34, 557 P.2d 626, 628 (1976), our Supreme Court stated:

> Whether a plea is voluntary and understood entails inquiry into three areas: (1) whether the defendant's plea was voluntary in the sense that he understood the nature of the charges and was not coerced; (2) whether the defendant knowingly and intelligently waived his rights to a jury trial, to confront his accusers, and to refrain from incriminating himself; and (3) whether the defendant understood the consequences of pleading guilty. It is clear that the voluntariness of a guilty plea can be determined by considering all of the relevant surrounding circumstances contained in the record.

Munoz argues that his guilty plea was not knowingly and intelligently entered because the district court did not inform him of the intent element required for conviction of murder. The district court, however, need not explain every element of the charged offense so long as the defendant receives "real notice of the true nature of the charge against him." *Bates v. State*, 106 Idaho 395, 698, 679 P.2d 672, 675 (Ct. App.1984) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941)).

The information charging Munoz with second degree murder alleged that he "knowingly, willfully, unlawfully, feloniously and deliberately, and with malice aforethought, but without premeditation, [did] kill and murder one Domingo Contreros." The plea to this charge came about through a plea bargain agreement by which the state agreed to reduce a charge of murder in the first degree, to not seek

sentence enhancement for use of a firearm and to dismiss a pending felony charge involving possession of property allegedly taken from the murder victim. The record shows that members of the law firm representing Munoz had several meetings with the defendant in attempting "to work out the best possible deal and arrangement" for him. They used an interpreter in explaining "legal terms and things of that sort." Before Munoz's plea of guilty was accepted the court inquired of counsel, "Have you gone over his defenses and possible consequences to a plea of guilty?" The reply was, "Yes, we have extensively, your Honor." Counsel also informed the court that "Mr. Munoz does admit to intentionally taking the life of another human being." Munoz was, of course, present with his counsel when this statement was made. In addition, a court interpreter translated all of these statements into Spanish for Munoz's benefit.

Munoz's attorney represented to the court that both the meaning and the consequences of a guilty plea had been explained to Munoz. His attorney further stated: "I believe Mr. Munoz's contention is that he is pleading guilty to every element necessary for second degree murder." The court, in addition, engaged in an extensive dialogue with Munoz regarding his constitutional rights, as well as the elements of and penalty for the charged offense. There is nothing in this dialogue that would give rise to a doubt about the defendant's understanding of the elements of the charged offense.

Furthermore, there has been no showing that Munoz, although he had only three years of formal education in Mexico, was of below average intelligence or was not adequately conversant in English. *Cf. State v. Bradley,* 98 Idaho 918, 575 P.2d 1306 (1978). He admitted he spoke "[a] little bit" of English. His attorney also stated that Munoz "understands English quite well" and a psychologist, appointed to examine him in connection with the presentence investigation, observed that "Mr. Munoz is fairly conversant in the English language." As we previously noted, for add-

ed protection, the court provided an interpreter and required Munoz to recite his version of the incident in Spanish to assure accuracy of expression. We hold that Munoz knowingly, intelligently and voluntarily pled guilty to second degree murder.

■ The second issue is whether Munoz was denied the assistance of effective counsel. In order to prevail on such a claim, a defendant must show (1) that his attorney's performance was deficient, and (2) that the deficient performance prejudiced him. *Strickland v. Washington,* — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The attorney's performance must be shown to fall below an objective standard of reasonableness in order to establish such a deficiency. *Id.* The standard for attorney performance in Idaho is that of reasonably competent assistance. *State v. Tucker,* 97 Idaho 4, 539 P.2d 556 (1975).

■ The basis of Munoz's contention is that his attorney did not adequately advise him of the effect of intoxication on the element of malice which is part of the intent required for second degree murder. The record, of course, does not reveal the content of any discussions which took place between the defendant and his attorney. Accordingly, we cannot know whether the attorney adequately apprised Munoz of the significance of his alleged intoxication. From the record we could presume that he did, since the record shows that Munoz and his attorney had a private conference to discuss the element of "malice aforethought" during a recess of the hearing when the guilty plea was taken.

Even if we assume his attorney did *not* inform Munoz that intoxication might negate the specific intent required to convict him of second degree murder, we nevertheless do not believe Munoz can prevail on this issue because he has not shown he was prejudiced by his attorney's performance. First, Munoz was informed of the intent necessary to convict him of second degree murder. Not only did the information clearly indicate that the defendant must have intended to kill the victim, but the

district court conscientiously determined that Munoz was admitting *every* element of the charged offense. Second, Munoz, while being examined by the court following his guilty plea, admitted his intent to kill. He related a bizarre episode in which he first wounded the victim while attempting to shoot a beer can off the victim's head, after the victim successfully had shot a can off Munoz's head. Munoz then deliberately shot the victim again, but he contended that his motive in firing the second, fatal shot was to put the victim out of his misery. This demonstrates both an intent to shoot and an intent to kill.

Munoz's almost total recall of the events surrounding the shooting is another indication that the degree of his intoxication was neither great, nor sufficient to negate the intent to kill. Moreover, shortly after Munoz was arrested on the charge of possession of stolen property, he was advised, with the aid of an interpreter, of his *Miranda* rights. He then gave a statement to the sheriff's deputies, explaining how he had intentionally fired the second shot into the victim to put him out of his misery. In view of this and other highly incriminating evidence which the sheriff's office had uncovered and had available for trial, we cannot say that Munoz was prejudiced by his alleged ignorance of a possible intoxication defense. Rather, it appears that Munoz made a calculated decision through the plea bargaining process to avoid the risks of going to trial on multiple, serious charges in exchange for the more limited consequences of pleading guilty to second degree murder. The record amply supports his conviction on this charge. Even in hindsight we cannot say that Munoz's decision was any indication that he lacked competent, thorough legal advice and assistance. We hold that the alleged failure to explain the effects of intoxication on the element of intent was not error such as to deprive the defendant of reasonably competent assistance.

Finally, Munoz argues that the district court abused its discretion in sentencing him to an indeterminate term not to exceed twenty years. He could have been sentenced to life imprisonment. *See* I.C. § 18-4004. Having reviewed the full record and having considered the sentence review criteria set forth in *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982), we conclude that the district court did not abuse its discretion. We therefore affirm Munoz's conviction and sentence.

WALTERS, C.J., and BURNETT, J., concur.